# UNITED STATES DISTRICT COURT
# DISTRICT OF MARYLAND

MS. SHAWNTE ANNE LEVY, *a/k/a*
*El Soudani El Wahhabi*, #416-369,

    Plaintiff,

v.

DAYENA CORCORAN, *Commissioner*, and
SHARON BAUCOM, *Director of Inmate Health Services*,

    Defendants.

Civil Action No. TDC-18-1291

## MEMORANDUM OPINION

Plaintiff Shawnte Anne Levy, a self-represented inmate at North Branch Correctional Institution ("NBCI") in Cumberland, Maryland and formerly known as El Soudani El Wahhabi, has been diagnosed with Gender Identity Disorder ("GID"), or gender dysphoria, a condition under which a person perceives strongly that he or she is not the gender of his or her physical appearance. In 2015, she filed a civil rights complaint in this Court pursuant to 42 U.S.C. § 1983 asserting that she was not receiving treatment in prison for her GID, in violation of the Eighth and Fourteenth Amendments to the United States Constitution and seeking relief in the form of estrogen medication and transgender psychotherapy. *See Levy v. Wexford,* TDC-14-3678, 2016 WL 865364, at *1 (D. Md. Nov. 20, 2014) ("*Levy I*"). In that case, the Medical Defendants conceded that Levy was entitled to treatment for GID pursuant to prison policy, and after a six-month court-monitored compliance period, the Court granted Defendants' Motions for Summary Judgment. *Levy v. Wexford Med. Sources,* No. TDC-14-3678, 2017 WL 3431951, at *12 (D. Md. Aug. 9, 2017) ("*Levy II*"), *aff'd* 710 F. App'x 157 (4th Cir. Feb. 1 2018) (per curiam). In that Opinion,

the Court also denied Levy's Motion to Amend the Complaint, in which Levy asked to be granted leave to amend her Complaint to expand her deliberate indifference claims to include the failure of the prison to authorize sex reassignment surgery. *Id.* at *8. The Court found that allowing Levy to amend to add a claim for sex reassignment surgery would be futile because, at that point, there was no physician who had determined that such surgery was medically necessary to treat Levy's GID. *Id.*

In the present lawsuit, Levy returns to the issue of sex reassignment surgery, alleging, in a civil rights complaint pursuant to 42 U.S.C. § 1983, that Defendants refuse to authorize gender-affirming surgery to treat her gender dysphoria, in violation of the Eighth Amendment and the Equal Protection Clause of the Fourteenth Amendment. She also asserts an equal protection claim based on the refusal of prison officials to reassign her to a correctional institution for women. She complains that at NBCI, a prison for male inmates, she has been housed in a Special Needs Unit or assigned to administrative segregation, which greatly restricts her movement. Levy seeks injunctive relief that would require Defendant to provide her with sex reassignment surgery, to classify her as a woman and reassign her to a women's prison, and to provide access to women's clothing.

Defendants have filed a Motion to Dismiss or, in the Alternative, Motion for Summary Judgment, which Levy opposes. The Court has reviewed the pleadings and briefs and finds no hearing necessary. D. Md. Local R. 105.6. For the reasons set forth below, Defendants' Motion will be GRANTED.

## BACKGROUND

### I. Sex Reassignment Surgery

Levy's prior treatment history for GID while confined at NBCI is set forth in *Levy II*, 2017 WL 3431951 at *2–6. In this lawsuit, Levy revisits the claim that the Court did not previously resolve, Levy's assertion that sex reassignment surgery is medically necessary for proper treatment of her GID. Maryland Department of Public Safety and Correctional Services ("DPSCS") guidelines on the treatment of transgender inmates, codified in Executive Directive OPS.131.0001, commit DPSCS to treat transgender inmates using an individualized treatment plan developed in consultation with a treating mental health professional, the DPSCS Regional Director of Mental Health, other clinicians providing treatment to the inmate, and the Regional Treatment Team, consisting of the Regional Director of Mental Health, the Regional Psychiatrist, and certain prison staff. That treatment plan is to conform to the standards promulgated by the National Commission on Correctional Health Care, which suggests that sex reassignment surgery should be provided when determined to be medically necessary for a patient.

As to the medical necessity of sex reassignment surgery, Levy asserts that she is suffering severe psychological distress and depression as a result of not being biologically female. This distress is so severe, Levy contends, that she engages in genital mutilation. For example, on February 9, 2018, she reported to a prison clinician during a therapy session that she "had been bleeding between [her] legs during the night as a result of mutilative behavior" as a result of the delays in providing her with gender-affirming surgery. Levy Decl. at 1, Compl. Ex. 1, ECF 1-2.

Levy also asserts that she has met the clinical guidelines for sex reassignment surgery. On this point, she cites the World Professional Association for Transgender Health ("WPATH") Guidelines, which require, in part, that the patient live for 12 months in the identity-congruent

3

gender role with hormone therapy, that surgery be recommended by two physicians, and that any significant medical or mental health conditions are well controlled. As to the two-physician requirement, Levy provides January 11, 2018 clinical support progress notes from two endocrinologists, Rana Malek, M.D. and Lauren Brooks, M.D. In addition to discussing Levy's ongoing hormone treatment, Dr. Malek states in the notes that Levy asked Drs. Malek and Brooks to support her in her efforts to obtain sex reassignment surgery, and that "[w]e do support her decision to undergo gender affirming surgery" and "recommend psychiatric evaluation for her depression and it[s] relationship to undergoing the surgery." Opp'n Mot. Summ. J. ("Opp'n") Ex. 1 at 1, ECF No. 25-1. These progress notes also state that Levy was previously recommended for evaluation by Dr. Chris Kraft, the Director of Clinical Services at the Johns Hopkins University Sex and Gender Clinic.

In response to Levy's assertions, Defendants submitted with their reply brief a declaration from Randall S. Nero, Ph.D., Director of Mental Health at Patuxent Institution, another DPSCS facility, who asserts that on November 9, 2018, the Regional Gender Dysphoria Committee met to discuss Levy's request for gender-affirming surgery and declined to recommend surgery at this time due in part to her history of both psychopathic and sociopathic traits. Specifically, Nero notes that Levy refuses to follow clinical recommendations for genital comfort, and that she is under the mistaken belief that she has been "chemically castrated." Nero Decl. ¶ 3, Reply Mot. Summ. J. Ex. 1, ECF No. 26-1. Nero states that neither Defendant Baucom nor Defendant Corcoran attended the November 9, 2018 meeting.

Nero further asserts that he and Dr. Kraft reviewed the January 2018 treatment notes from Drs. Malek and Brooks and understood the parts cited by Levy to signify that Drs. Malek and Brooks believed Levy should be supported in her transgender process, not that they were

4

recommending her for surgery. Nero further notes that gender-affirming surgery requires the recommendation of two mental health professionals who are deemed experts in gender-specific treatment, and that Dr. Brooks, who is an endocrinology fellow, lacks the expertise to make a recommendation for sex reassignment surgery.

On December 20, 2017, Levy filed Administrative Remedy Procedure grievance ("ARP") No. NBCI-2906-17 in which she complained that she has been denied gender-affirming surgery. The grievance alleged misconduct by the contract medical staff, not by correctional personnel. On March 1, 2018, having received Levy's appeal of the ARP denial, the Inmate Grievance Office ("IGO") administratively dismissed the complaint because Levy had not provided proof that she appealed the ARP to the Commissioner of Correction and because the IGO lacked jurisdiction over the contract medical personnel.

## II. Prison Reassignment and Commissary Items

In 2017, Levy filed ARP No. NBCI-2680-17, a grievance in which she complained that as a transgender female, she should be classified as a female. On December 4, 2017, Levy appealed the Warden's denial of her grievance to the IGO in IGO No. 20171804. As of September 12, 2018, the IGO had not resolved the appeal. The parties have submitted no information to establish whether it has since been resolved. In her Complaint, Levy asserts that Defendants have failed to house in her in a women's correctional institution, causing substantial risk of serious psychological and physical harm by male inmates and correctional officers.

In 2016, Levy filed ARP No. NBCI-0810-16, a grievance alleging that the contract commissary provider, Keefe Commissary, and NBCI personnel denied her request to order feminine items such as lipstick, eyeliner, and other make-up. The grievance was denied at the institutional level, and on June 29, 2016, Levy appealed the grievance to the IGO in IGO No.

20161103. On August 11, 2016, the IGO requested that Levy provide within 30 days supporting documentation required by state regulations. When Levy did not provide the requested documentation, the grievance was administratively dismissed on September 12, 2016.

On August 13, 2018, in a supplement to her Complaint, Levy asserted that Keefe and NBCI did not permit her to order bras, women's t-shirts, and other women's items, as well as soap, toothpaste, shampoo, and other miscellaneous items.

## DISCUSSION

Defendants' have filed a Motion to Dismiss or, in the Alternative, a Motion for Summary Judgment. In their Motion, Defendants argue that they are entitled to Eleventh Amendment immunity; that Levy's Complaint does not allege sufficient facts to state a claim; that Levy's Eighth Amendment rights to adequate medical and mental health care and Fourteenth Amendment equal protection rights have not been violated; that Levy is not entitled to classification and transfer to the prison of her choosing; that any violation of Defendants' policies, procedures, or regulations does not amount to a violation of due process; and that injunctive relief is not warranted. Defendants also raise as an affirmative defense Levy's failure to properly exhaust administrative remedies.

### I.  Legal Standards

Defendants seek dismissal under Federal Rule of Civil Procedure 12(b)(6) or summary judgment under Rule 56. When deciding a motion to dismiss under Rule 12(b)(6), the Court considers only the complaint and any attached documents "integral to the complaint." *Sec'y of State for Defense v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007). To the extent that the grounds for dismissal are based solely on the contents of the Complaint, the Court may dismiss the Complaint if it does not allege enough facts to state a plausible claim for relief. *Ashcroft v.*

*Iqbal*, 556 U.S. 662, 678 (2009). A claim is plausible when the facts pleaded allow "the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Although courts should construe pleadings of self-represented litigants liberally, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), legal conclusions or conclusory statements do not suffice, *Iqbal*, 556 U.S. at 678. The Court must examine the complaint as a whole, consider the factual allegations in the complaint as true, and construe the factual allegations in the light most favorable to the plaintiff. *Albright v. Oliver*, 510 U.S. 266, 268 (1994); *Lambeth v. Bd. of Comm'rs of Davidson Cty.*, 407 F.3d 266, 268 (4th Cir. 2005).

Rule 12(d) requires courts to treat a Rule 12(b)(6) motion as a motion for summary judgment where matters outside the pleadings are considered and not excluded. Fed. R. Civ. P. 12(d). Before converting a motion to dismiss to one for summary judgment, courts must give the nonmoving party "a reasonable opportunity to present all the material that is pertinent to the motion." *Id.* "Reasonable opportunity" has two requirements: (1) the nonmoving party must have some notice that the court is treating the Rule 12(b)(6) motion as a motion for summary judgment, and (2) the nonmoving party "must be afforded a reasonable opportunity for discovery" to obtain information essential to oppose the motion. *Gay v. Wall*, 761 F.2d 175, 177 (4th Cir. 1985) (citation omitted). Here, the notice requirement has been satisfied by the title of the Motion and the notice by the Court to Levy advising her of the provisions of Rules 12 and 56. To show that a reasonable opportunity for discovery has not been afforded, the nonmoving party must file an affidavit or declaration under Rule 56(d) explaining why "for specified reasons, it cannot present facts essential to justify its opposition," Fed. R. Civ. P. 56(d), or otherwise put the district court on notice of the reasons why summary judgment is premature. *See Harrods, Ltd. v. Sixty Internet*

*Domain Names*, 302 F.3d 214, 244-45 (4th Cir. 2002); *Hamilton v. Mayor & City Council of Balt.*, 807 F. Supp. 2d 331, 341 (D. Md. 2011).

Here, Levy has not filed a Rule 56(d) affidavit. In her Opposition, she has requested that Defendants produce to her all materials shared with the Court, but that request has been fulfilled because all docketed materials were sent to Levy. The Court therefore finds that except as discussed below, discovery is not necessary to resolve the Motion based on the theories on which the Court will rely. Accordingly, the Court will construe the Motion as seeking summary judgment as to those arguments to the extent that they require consideration of the attached exhibits.

Under Federal Rule of Civil Procedure 56, the Court grants summary judgment if the moving party demonstrates that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In assessing the Motion, the Court views the facts in the light most favorable to the nonmoving party, with all justifiable inferences drawn in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The Court may rely only on facts supported in the record, not simply assertions in the pleadings. *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248. A dispute of material fact is only "genuine" if sufficient evidence favoring the nonmoving party exists for the trier of fact to return a verdict for that party. *Id.* at 248–49.

Because Levy is self-represented, her submissions are liberally construed. *See Erickson*, 551 U.S. at 94. Nevertheless, the court must also abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat*, 346 F.3d at 526.

## II. Eleventh Amendment

Defendants assert that to the extent that Levy seeks to sue Defendants in their official capacity, they are immune to suit by virtue of the Eleventh Amendment. However, because Levy seeks only prospective injunctive relief, this argument has no traction. The United States Supreme Court has made clear that "the Eleventh Amendment permits suits for prospective injunctive relief against state officials acting in violation of federal law." *Frew ex. rel. Frew v. Hawkins*, 540 U.S. 431, 437 (2004) (addressing claims under 42 U.S.C. § 1983 against state officials sued in their official capacity).

## III. Exhaustion of Administrative Remedies

Defendants raise the affirmative defense that Levy has failed to exhaust administrative remedies. Under the Prison Litigation Reform Act, 42 U.S.C. § 1197e(a) (2012):

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

*Id.* Inmates must exhaust administrative remedies before they bring any "suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). Because Levy has not asserted any need for discovery on the issue of exhaustion, the Court will consider the submitted materials and construe the Motion as seeking summary judgment on this issue.

Exhaustion is mandatory and generally may not be excused unless the administrative procedure is not available. *See Ross v. Blake,* 136 S. Ct. 1850, 1858 (2016) (holding that an inmate "must exhaust available remedies, but need not exhaust unavailable ones"). "[A]n administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of it." *Moore v. Bennette,* 517 F.3d 717, 725 (4th Cir. 2008). In

*Ross,* the United States Supreme Court identified three circumstances when an administrative remedy is unavailable: when (1) officers are "unable or consistently unwilling to provide relief to aggrieved inmates," (2) the procedure is "so opaque that it becomes, practically speaking, incapable of use," or (3) prison administrators actively "thwart" inmates from filing grievances. *Ross,* 136 S. Ct. at 1859–60.

In Maryland prisons, for the type of grievance asserted by Levy, the Administrative Remedy Procedure is the administrative process that must be exhausted. Md. Code Regs. § 12.02.28.02(B)(1), (D) (2018). First, a prisoner must file an ARP with the warden within 30 days of the incident at issue. Md. Code Regs. § 12.02.28.05(D)(1) (requiring filing with the "managing official"); Md. Code Regs. § 12.02.28.02(B)(14) (defining "managing official" as "the warden or other individual responsible for management of the correctional facility"); Md. Code Regs. § 12.02.28.09(B) (setting the 30-day deadline). Second, if the ARP is denied, or the inmate does not receive a timely response, a prisoner must file an appeal with the Commissioner of Correction within 30 days. Md. Code Regs.§ 12.02.28.14(B)(5). If the appeal is denied, the prisoner must appeal within 30 days to the IGO. *See* Md. Code. Ann., Corr. Servs. §§ 10-206, 10-210 (West 2002); Md. Code Regs. § 12.07.01.05(B). Inmates may seek judicial review of the IGO's final determinations in a Maryland Circuit Court. *See* Md. Code Ann., Corr. Servs. § 10-210(a).

Levy filed ARPs relating to her alleged lack of access to female clothing at the prison commissary, her lack of designation to a women's prison, and the denial of sex reassignment surgery. The uncontested record establishes that Levy did not exhaust her grievance as to the prison commissary. Although she appealed the denial of that ARP to the IGO, when the IGO requested additional information in order to review her grievance, she failed to provide that information. Where Levy did not properly exhaust the IGO process, she has not met the

requirement to exhaust administrative remedies. *Woodford v. Ngo*, 548 U.S. 81, 90 (2006) ("Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules," which "means using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits).") (citation omitted). Moreover, there is no claim or evidence that Levy filed an ARP relating to her commissary complaints asserted in her August 13, 2018 supplement to the Complaint. The Motion will therefore be granted as to these claims.

As for Levy's ARP relating to the failure to designate her as a female and place her in a women's prison, Defendants have provided a declaration from an IGO official stating that Levy's IGO appeal of that ARP was filed on December 4, 2017, and that as of September 12, 2018, no administrative decision had been issued. Defendants have provided no update on whether that IGO grievance has since been resolved. Although the declaration provides undisputed evidence that administrative remedies had not been exhausted as of the filing of the Complaint on May 2, 2018, *Moore*, 517 F.3d at 725 (stating that "prisoners must exhaust 'such administrative remedies as are available' prior to filing suit in federal court"), the fact that the IGO took no action for nine months on Levy's appeal, and appears still to have failed to act on the grievance for another 12 months, raises real concerns whether the ARP process is actually available to Levy on this issue. *See Ross*, 136 S. Ct. at 1859 (concluding that exhaustion is unavailable to an inmate when "it operates as a simple dead end"). The Court concludes that the present record is therefore insufficient to permit a grant of summary judgment on this issue.

Finally, although Defendants argue that Levy has not exhausted administrative remedies on her grievance relating to sex reassignment surgery, as discussed below, that claim is properly directed not at the named Defendants, but at medical and mental health personnel which include contract personnel. The ARP process need not be exhausted for claims of deliberate indifference

11

to a serious medical need filed against contract medical personnel. *See* Md. Code. Ann. Corr. Services. § 10-206(a) (stating that grievances may be filed "against an official or employee of the Division of Correction"); COMAR 12.07.01.01B(8) (defining a "grievance" as a complaint filed "against any officials or employees of the Division [of Correction]"). Accordingly, the Court will not grant the Motion as to the sex reassignment surgery claim on the basis of lack of exhaustion of administrative remedies.

### IV. Supervisory Liability

Levy has named as Defendants Dayena Corcoran and Sharon Baucom. Corcoran served as Acting Commissioner of Correction from April 8, 2016 until May 16, 2016, at which time she became Commissioner of Correction, a position she held until her August 31, 2018 retirement. Baucom has served as the DPSCS Director of Clinical Services for 12 years. Levy nowhere sets forth any allegations that Defendants were personally involved in any treatment decisions as to Levy, much less any treatment decisions specifically as to sex reassignment surgery, or decisions on her prison assignment. Other than being named in the caption, Defendants are not otherwise mentioned as participants in the factual allegations of the Complaint, nor does Levy attribute any action or inaction to these Defendants that resulted in denial of her constitutional rights.

To the extent that Corcoran and Baucom are named simply because they are supervisors, it is well established that the doctrine of *respondeat superior*, or vicarious liability, does not apply to § 1983 claims. *See Love-Lane v. Martin*, 355 F.3d 766, 782 (4th Cir. 2004). Liability of supervisory officials "is premised on 'a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care.'" *Baynard v. Malone*, 268 F.3d 228, 235 (4th Cir. 2001) (quoting *Slakan v. Porter*, 737 F.2d 368, 372 (4th Cir. 1984)). Supervisory liability under

§ 1983 must be supported with evidence that: (1) the supervisor had actual or constructive knowledge that a subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff; (2) the supervisor's response to the knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices; and (3) there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff. *Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994).

Nothing in Levy's allegations suggests that either Defendant had knowledge of the alleged constitutional violations relating to prison assignment or sex reassignment surgery but failed to act. Baucom's uncontested declaration establishes that although she is a medical doctor, Baucom does not practice medicine, nor does she provide direct medical care to prisoners; rather, she is an administrator who reviews and updates procedures involving medical care for the DPSCS. Baucom has no supervisory authority over contract medical staff and does not approve or deny medical procedures recommended by the medical staff unless those procedures violate DPSCS clinical policy. Baucom further asserts that the Commissioner of Correction likewise lacks the authority to make clinical decisions regarding health care provided for prisoners. Finally, where Defendants have submitted with their reply brief a document that appears to be the minutes from a November 9, 2018 Gender Dysphoria Meeting relating to Levy, and that document identifies the participants in that meeting but makes no mention of either Corcoran or Baucom participating in that meeting, there is no evidence that either Defendant played any role in the decisionmaking relating to sex reassignment surgery. Accordingly, the Motion will be granted as to both named Defendants.

## V. Leave to Amend

Although the Motion may be granted and the Complaint dismissed on the grounds that Levy has not named proper defendants, the Court notes that since the filing of the Motion, Levy has requested leave to amend the Complaint, which the Court denied without prejudice to allow for the resolution of this Motion. Levy's failure to name a proper defendant is understandable, both because she is self-represented and because there has been a lack of clarity on who has made, or failed to make, decisions relating to the issues raised in her Complaint. Thus, the Court would ordinarily allow Levy to seek leave to amend to name proper defendants.

However, where the Court need not grant leave to amend where amendment would be futile, *see U.S. Airline Pilots Ass'n v. Awappa, LLC*, 615 F.3d 312, 320 (4th Cir. 2010), and Defendants have asserted that summary judgment on the merits is warranted based on the present record, the Court will briefly address that argument. Although Defendants submitted with their reply brief the minutes of the Gender Dysphoria Meeting of November 9, 2018 and an explanatory declaration by Dr. Randall Nero, a member of the committee who participated in that meeting, the Court concludes that the record is not sufficiently complete in order for the Court to fairly determine whether summary judgment should be granted on this claim. First, Levy requested declarations from Dr. Malek and Dr. Brooks, the endocrinologists whom she claims to support her sex reassignment surgery. The Court construes that request as seeking discovery under Rule 56(d) on this issue. Where Defendants have submitted a declaration in which Dr. Nero and Dr. Kraft purport to interpret the views of Dr. Malek and Dr. Brooks, the Court finds that Levy's request for affidavits or other information directly from the endocrinologists on their specific views on whether Levy should receive sex reassignment surgery is reasonable, and that such evidence should be obtained and produced before summary judgment may be considered.

Moreover, where the Gender Dysphoria Meeting did not take place until after the Complaint and Motion were filed, and the documentation relating to that meeting was produced only with Defendants' reply brief, Levy has not had a fair opportunity to respond to those materials. These records also highlight certain questions regarding this case for which the record is insufficiently developed, including (1) what actions, if any, were taken by medical personnel to consider and evaluate Levy's request for sex reassignment surgery prior to November 9, 2018; (2) why no actions were taken on this issue until November 2018; (3) what actions have been taken on Levy's request to be reassigned to a women's prison, what decisions have been made, and who made those decisions; and (4) why Levy's ARP on the prison reassignment has not been resolved almost two years after it was filed. The Court therefore finds that the record is insufficiently developed to permit the Court to rule on whether summary judgment is warranted on the remaining issues.

For these reasons, Levy will be permitted to seek leave to amend the Complaint. In doing so, Levy will be limited to asserting against proper defendants the three claims asserted in the original Complaint, consisting of claims of violations of constitutional rights arising from (1) the failure to provide sex reassignment surgery; (2) the failure to designate Levy to a women's prison; and (3) only if all administrative remedies have been properly exhausted, the failure of the prison to provide access to women's products through the commissary or otherwise. Although Levy may add additional facts based on more recent events, she may not introduce new claims based on different events or legal theories.

Where Levy previously sought to add Corizon Health, Inc. as a defendant, ECF No. 34, the Court clarifies for Levy that absent a custom or policy of constitutional violations, the medical contractor entity would not be a proper defendant. *Austin v. Paramount Parks*, 195 F.3d 715, 727–

28 (4th Cir. 1999). Proper defendants would be the actual individuals who made decisions relating to her sex reassignment surgery and prison assignment requests. The Court notes that to the extent that individuals who made decisions relating to Levy's sex reassignment surgery and prison reassignment requests are employees of the Division of Correction, rather than contractors, Levy's claims must first be exhausted through the ARP process. *See* Md. Code. Ann., Corr. Services. §10-206(a) (stating that grievances may be filed "against an official or employee of the Division of Correction"); COMAR 12.07.01.01B(8) (defining a "grievance" as a complaint filed "against any officials or employees of the Division [of Correction]").

Should Levy file a viable Amended Complaint, the new Defendants will be required to produce to Levy all available documents relating to the three issues identified above, as well as affidavits or other direct evidence of the opinions of Dr. Malek and Dr. Brooks on the question of sex reassignment surgery for Levy, before filing any additional dispositive motions. If the produced materials are incomplete, the Court will consider a motion for formal discovery.

## CONCLUSION

For the foregoing reasons, the Motion to Dismiss or, in the Alternative, Motion for Summary Judgment will be GRANTED. Defendants Corcoran and Baucom will be dismissed as defendants. Levy will be granted leave to file a motion to amend the complaint to name proper defendants. A separate Order shall issue.

Date: September 23, 2019

THEODORE D. CHUANG
United States District Judge