# UNITED STATES DISTRICT COURT
## DISTRICT OF MARYLAND

| | | |
|---|---|---|
| SHAWNTE ANNE LEVY, | : | |
| | : | |
| Plaintiff | : | |
| | : | |
| v. | : | Civil Action No. TDC-18-1291 |
| | : | |
| DAYENA CORCORAN, et al. | : | |
| | : | |
| Defendants | : | |

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT, CHRIS KRAFT, PH.D.'S MOTION TO DISMISS

THE DEFENDANT, Chris Kraft, Ph.D., through counsel, hereby files this Memorandum of Points and Authorities in Support of his Motion to Dismiss the Amended Complaint filed by Plaintiff, Shawnte Anne Levy ("Plaintiff"), ECF No. 43, for failure to state a claim upon which relief can be granted.

## I.    BACKGROUND AND RELEVANT FACTS

Plaintiff is a prisoner in the custody of the Maryland Department of Public Safety and Correctional Services ("DPSCS") at the North Branch Correctional Institution ("NCBI") in Cumberland, Maryland. *See generally* Am. Compl. at ¶¶ 1, 2.

Plaintiff is a transgender female. Am. Compl. at ¶¶ 1, 2. Plaintiff is a biological male whose current gender identity and legal sex designation is female. Am. Compl. at ¶¶ 1, 2, 27; Ex. 2A to Am. Compl., ECF No. 43-3. Plaintiff has been diagnosed with gender dysphoria. Am. Compl. at ¶¶ 12, 27.

This is the second lawsuit filed by Plaintiff related to the treatment for her gender dysphoria. *See Levy v. Wexford,* TDC-14-3678, 2016 WL 865364. While the first lawsuit dealt primarily with Plaintiff's request to receive feminizing hormone therapy to treat her gender

dysphoria, the instant lawsuit is primarily rooted in Plaintiff's desire to undergo sex reassignment surgery ("SRS") in addition to her current gender dysphoria treatment. *See* Memorandum Opinion dated Sept. 23, 2019, ECF No. 41, at p. 1-2.

The treatment of Plaintiff's gender dysphoria is governed by the DPSCS guidelines on the treatment of transgender inmates, codified in Executive Directive OPS.131.0001, entitled "Identification, Treatment and Correctional Management of an Inmate Diagnosed with Gender Dysphoria" ("Executive Directive"). Am. Compl. ¶¶ 4, 5, 15; Ex. 2 to Am. Compl., ECF No. 43-2. The Executive Directive

> commit[s] DPSCS to treat transgender inmates using an individualized treatment plan developed in consultation with a treating mental health professional, the DPSCS Regional Director of Mental Health, other clinicians providing treatment to the inmate, and the Regional Treatment Team, consisting of the Regional Director of Mental Health, the Regional Psychiatrist, and certain prison staff. That treatment plan is to conform to the standards promulgated by the National Commission on Correctional Health Care, which suggests that sex reassignment surgery should be provided when determined to be medically necessary for a patient.

Memorandum Opinion dated Sept. 23, 2019, ECF No. 41, at p. 2.

In the case of inmates with a confirmed gender dysphoria diagnosis, the Executive Directive requires the Regional Treatment Team to develop <u>appropriate and medically necessary treatment recommendations.</u> Ex. 2 to Am. Compl., ECF No. 43-2, at §.05C(6). A Mental Health Clinician assigned to the inmate then must prepare an individualized, initial treatment plan or, if applicable, review and revise an existing treatment plan, <u>incorporating the diagnosis along with all other outstanding existing mental health issues</u>. *Id.* at §.05D(1). A Mental Health Clinician is "a treatment provider <u>properly licensed as a psychiatrist, psychologist, clinical social worker, mental health counselor, certified nurse practitioner, and other professionals</u> who by virtue of education, credentials, and experience are permitted by law to evaluate and care for the <u>mental health needs</u>

of an individual." *Id.* at §.04B(9) (emphasis added).

The individualized treatment plan should be developed consistent with the principles recommended for gender dysphoria inmates promulgated by the National Commission on Correctional Health Care and in consultation with (a) the inmate's treating psychiatrist; (b) the Regional Director of Mental Health; (c) other clinicians or practitioners providing services to the inmate; and (d) the Regional Treatment Team, in accordance with any recommendations made by the Regional Treatment Team. *Id.* at §.05D(2).

Plaintiff has received ongoing medical and psychological treatment for gender dysphoria while at NCBI, including, but not limited to, ongoing feminizing hormone therapy since 2014, transgender psychotherapy, and evaluation by several specialists, including endocrinologists and Defendants Randall S. Nero, Ph.D. and Chris Kraft, Ph.D. Am. Compl. at ¶¶ 3, 13-16, 20, 21, 24, 27.

Defendant, Chris Kraft, Ph.D. is a sexual behavior psychologist in the Department of Psychiatry at the Johns Hopkins School of Medicine and is a Gender Dysphoria Consultant to DPSCS. Am. Compl. at ¶¶ 7 and Ex. 2, ECF No. 43-2, at 04.B.(6); *see also* Declaration of Randall S. Nero, Ph.D., ECF No. 26-1, at ¶ 4; Ex. 3 to Pl's Compl., ECF No. 1-3, at p. 2. The Executive Directive defines the Gender Dysphoria Consultant as "a licensed health care professional who has credentials, training, and documented experience in working with the Gender Dysphoria population, as well as with board certified psychiatrists, licensed psychologists, and licensed social workers who treat individuals with Gender Dysphoria." Ex. 2 to Am. Compl., ECF No. 43-2, at §.04B(6).

Defendant Randall S. Nero, Ph.D. is a licensed psychologist in the state of Maryland and serves as the Director of Mental Health/Patuxent Institution for DPSCS. *See* Am. Compl. at ¶¶ 6;

*see also* Declaration of Randall S. Nero, Ph.D., ECF No. 26-1, at ¶ 1.

Plaintiff alleges that, on July 23, 2017, Defendants Randall S. Nero, Ph.D. and Chris Kraft, Ph.D., along with mental health counselor, Bruce Liller, evaluated Plaintiff at NCBI. Am. Compl. at ¶¶ 14, 16-17.

Thereafter, on January 11, 2018, Plaintiff was seen by Lauren Brooks, M.D., an endocrinology fellow at the University of Maryland. Am. Compl. at ¶¶ 13, 20; *see also* Ex. 3 to Pl's Compl., ECF No. 1-3.

Dr. Brooks noted that Plaintiff had been previously seen by endocrinologist David Levitt, M.D. at the prisoner endocrine clinic on April 27, 2017; during this visit, Dr. Brooks documented the Plaintiff's ongoing feminizing hormone therapy. Ex. 3 to Pl's Compl., ECF No. 1-3 at p. 1. Dr. Brooks recorded the progress of Plaintiff's hormone therapy, including breast growth, body hair thinning and reduction, and cessation of morning erections. *Id.* at p. 2. She noted that Plaintiff's estradiol level had been elevated and that her regimen had been decreased accordingly. *Id.* at p. 1.

Dr. Brooks' review of systems was positive for headaches but was otherwise unremarkable and normal. *Id.* at p. 2. The Plaintiff's physical exam was unremarkable and within normal limits; she was noted to be in no distress. *Id.* at p. 3. The exam revealed that Plaintiff's breast growth had progressed to Tanner stage 4.[1] *Id.*

Dr. Brooks also noted the Plaintiff's subjective desire for SRS, as follows:

> She is interested in gender affirming surgery, but has had challenges pursuing this while incarcerated. She feels that gender affirming surgery would improve her mental health and quality of life … She also desires gender affirming surgery and per prior notes she was recommended to be evaluated by Dr. Chris Kraft PhD-Director of clinical service unit of psychiatry of Johns Hopkins School of Medicine.

---

[1] Stage 4 is the final stage prior to breast maturity (Stage 5) in adolescent girls. *See* W. A. Marshall and J. M. Tanner, *Variations in pattern of pubertal changes in girls,* Arch Dis Child. 1969 Jun; 44(235): 291–303, available at https://www.ncbi.nlm.nih.gov/pmc/articles/PMC2020314/pdf/archdisch01552-0003.pdf

*Id.* at p. 1-2.

Dr. Brooks <u>recommended continued estradiol and spironolactone hormone therapy</u>, to be titrated based on laboratory results to achieve goal levels of estradiol and testosterone. *Id.* at p. 4. Dr. Brooks also noted that she "<u>support[s]</u> [Plaintiff's] decision [to] pursue gender affirming surgery" and that she "agree[s] with psychiatric evaluation for depression." *Id.* at p. 4.

Plaintiff was also examined by endocrinologist, Rana Malek, M.D. Am. Compl. at ¶ 20; *see also* Ex. 3 to Pl's Compl., ECF No. 1-3. Dr. Malek concurred with Dr. Brooks' history, exam, assessment, and plan. *See* Ex. 3 to Pl's Compl., ECF No. 1-3., at p. 1. Dr. Malek further noted Plaintiff's subjective desire to undergo SRS, as follows:

> <u>She would like</u> to undergo gender affirming surgery and <u>has asked us to support her</u>. <u>She states</u> that her depression and mental health is worsened by not having the surgery. <u>We do support her decision to undergo gender affirming surgery and recommend psychiatric evaluation for her depression and it [sic] relationship to undergoing the surgery</u>.

*Id.*

Beyond expressing support for Plaintiff's stated desire for SRS, neither Dr. Brooks nor Dr. Malek recorded a <u>medical recommendation</u> for SRS. <u>Neither Dr. Brooks nor Dr. Malek opined that SRS was medically necessary</u> to treat Plaintiff's gender dysphoria. <u>Neither Dr. Brooks nor Dr. Malek opined that Plaintiff's existing treatment regimen was improper or inadequate</u>. In fact, <u>Dr. Brooks and Dr. Malek concurred on the plan to continue Plaintiff's hormone therapy</u>. Moreover, <u>Dr. Brooks and Dr. Malek agreed on the need for further psychiatric evaluation</u> of Plaintiff in connection with her desire to undergo SRS.

On November 9, 2018, consistent with Dr. Brooks and Dr. Malek's recommendation, the DPSCS Regional Gender Dysphoria Committee ("RGDC") met to discuss Plaintiff's request for

SRS. *See* Declaration of Randall S. Nero, Ph.D., ECF No. 26-1, at ¶ 2. The RGDC did not recommend SRS for Plaintiff based on the following factors:

i.   Plaintiff's history of both <u>psychopathic and sociopathic traits;</u>

ii.  Plaintiff's diagnosis of Gender Dysphoria and <u>Major Depressive disorder with psychotic features;</u>

iii. Plaintiff's refusal to follow recommendations from the Gender Dysphoria Consultant [Dr. Kraft] designed to allow for genital comfort while incarcerated;

iv.  Plaintiff's inaccurate understanding of current hormone treatment as evidenced by her incorrect medical belief, <u>likely resulting from her psychiatric/psychological diagnoses,</u> that she has been chemically castrated, which has been refuted by the DPSCS Chief Medical Officer[.]

*Id.* at ¶ 3 (emphasis added).

Based on its discussion of Plaintiff's request for SRS, the RGDC concluded that the <u>combination of hormone therapy, social feminization, psychiatric care, and supportive therapy constituted appropriate care for Plaintiff's gender dysphoria.</u> *Id.*

## II.   CLAIMS ASSERTED IN PLAINTIFF'S AMENDED COMPLAINT

As to this Defendant, Dr. Kraft, Plaintiff's Amended Complaint asserts two claims for injunctive relief based on alleged violations of 42 U.S.C. §1983. Am. Compl. at ¶ 3.

Count One alleges deprivation of the right to medically necessary treatment under the Eighth Amendment. *Id.* at Count One, p. 13. The gravamen of Plaintiff's Eighth Amendment claim is her allegation that Defendants have failed to provide her with SRS, which Plaintiff alleges is medically necessary. *Id.* at ¶ 27. Plaintiff further alleges that in failing to provide Plaintiff with SRS, the Defendants have acted with deliberate indifference to Plaintiff's serious medical needs in violation of the Eighth Amendment's proscription on cruel and unusual punishment. *Id.* at ¶ 28-29.

Count Two alleges deprivation of the right to equal protection under the Fourteenth Amendment. *Id.* at Count Two, p. 14. The precise legal theory underpinning Count Two is unclear.

In the light most favorable to the Plaintiff, Count Two appears to allege that Plaintiff, as a transgender female prisoner, is treated differently than cisgender female prisoners. *Id.* at ¶¶ 32, 34.

Count Two fails to articulate the difference in treatment between transgender and cisgender female prisoners which Plaintiff alleges is facially discriminatory against her. In the light most favorable to the Plaintiff, Count Two appears to allege that certain medical interventions — specifically vaginoplasty[2], orchiectomy[3], and castration[4]—are available to cisgender female prisoners but have been discriminatorily denied to Plaintiff. *Id.* Besides a conclusory assertion that these procedures have been denied to Plaintiff but have been made available to other prisoners, the Amended Complaint fails to allege any facts capable of establishing that Plaintiff is being treated differently than any other similarly situated prisoners, including (1) instances in which these procedures were offered to other prisoners, if any; (2) the characteristics of such other prisoners, if any; and (3) the circumstances under which the procedures were offered to other prisoners.

Count Three of the Amended Complaint appears to assert claims against co-defendant Keefe Commissary Network ("KCN"), only.[5] *Id.* at Count Three, p. 16. Count Three alleges deprivation of the right to equal protection under the Fourteenth Amendment. *Id.* at ¶ 37.

---

[2] Vaginoplasty (also known as posterior colporrhaphy) is a procedure designed to tighten the vagina. American Society of Plastic Surgeons, *Vaginoplasty*, https://www.plasticsurgery.org/cosmetic-procedures/aesthetic-genital-plastic-surgery/vaginoplasty

[3] An orchiectomy (or orchidectomy) is a surgical procedure to remove one or both testicles. Cleveland Clinic, *Orchiectomy*, https://my.clevelandclinic.org/health/treatments/21467-orchiectomy

[4] Castration is any action, surgical, chemical, or otherwise, by which an individual loses use of the testicles: the male gonad. Surgical castration is bilateral orchiectomy (excision of both testicles), while chemical castration uses pharmaceutical drugs to deactivate the testes. Wikipedia, *Castration*, https://en.wikipedia.org/wiki/Castration

[5] The claims against KFN have already been dismissed. *See* Memorandum Order dated Feb. 4, 2002, ECF No. 96.

Specifically, Plaintiff alleges in Count Three that Defendants have failed to provide Plaintiff with access to certain prison commissary special-order items which are otherwise available to other female prisoners. Count Three does not mention this Defendant and the Amended Complaint does not allege that this Defendant had any role in KCN's alleged failure to fulfill Plaintiff's commissary orders. Count Three does not appear to state a claim against this Defendant.

## III.   LEGAL STANDARDS

### a.   Motion to Dismiss under Fed. R. Civ. Proc. 12(b)(6)

Federal Rule of Civil Procedure 8(a)(2) requires that pleadings contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.Proc. 8(a)(2). Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation [;] labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)).

A motion to dismiss filed under Federal Rule of Procedure 12(b)(6) tests the sufficiency of the complaint. *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (2009) (citations and quotation marks omitted).

A claim satisfies the facial plausibility requirement

> when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief…

*Id.* (citations and quotation marks omitted).

Ordinarily, the facial plausibility analysis is limited to the "well-pled facts in the complaint" which the court must view "in the light most favorable to the plaintiff." *Brockington v. Boykins*, 637 F.3d 503, 505 (4th Cir.2011). However, a court may rely on extrinsic materials to adjudicate a motion to dismiss without converting the proceeding into a motion for summary judgment. *See* Fed.R.Civ.P. 12(d). In this way, a court may properly take judicial notice of "matters of public record" and other information that, under Federal Rule of Evidence 201, constitute "adjudicative facts"—i.e., are "simply the facts of the particular case." *Goldfarb v. Mayor & City Council of Baltimore*, 791 F.3d 500, 508 (4th Cir. 2015) (citing Fed.R.Evid. 201, Advisory Committee's note). A court can also consider documents that are explicitly incorporated into the complaint by reference as well as those attached to the complaint as exhibits. *Goines v. Valley Cmty. Services Bd.*, 822 F.3d 159, 166 (4th Cir. 2016) (citing *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322, 127 S.Ct. 2499, 168 L.Ed.2d 179 (2007) and Fed.R.Civ.P. 10(c)). Moreover, the court may also consider a document submitted by the movant that was not attached to or expressly incorporated in a complaint, so long as the document was integral to the complaint and there is no dispute about the document's authenticity. *Goines*, 822 F.3d at 166 (citations omitted).

Although a court will accept factual allegations as true, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678, 173 L.Ed.2d 868. Moreover, the court need not accept "legal conclusions couched as factual allegations or unwarranted inferences, unreasonable conclusions, or arguments." *E. Shore Markets, Inc. v. J.D. Associates Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir.2000) (citation omitted). Likewise, the court need not "accept as true allegations that contradict matters properly subject to judicial notice or by exhibit." *Veney v. Wyche*, 293 F.3d 726, 730 (4th Cir. 2002) (citation

omitted).

A complaint which does not allege enough facts to state a claim to relief that is plausible on its face must be dismissed. *Johnson v. Am. Towers, LLC*, 781 F.3d 693, 709 (4th Cir. 2015) (citation omitted). Indeed, where the face of a complaint plainly fails to state a claim for relief, the district court has "no discretion but to dismiss it." *Eriline Co. S.A. v. Johnson*, 440 F.3d 648, 655 n. 10 (4th Cir.2006) (citation omitted).

### b. Constitutional Claims Framework

The Amended Complaint seeks relief primarily pursuant to 42 U.S.C. § 1983. Section 1983 provides, in relevant part, that

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects ... any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.

Importantly, § 1983 "is not '<u>a source of substantive rights, but a method for vindicating</u> <u>federal rights elsewhere</u> conferred by those parts of the United States Constitution and federal statutes that it describes.'" *Lambert v. Williams*, 223 F.3d 257, 260 (4th Cir. 2000) (quoting *Baker v. McCollan*, 443 U.S. 137, 144, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979) (emphasis added).

Plaintiff also seeks relief under Article 46 of the Maryland Declaration of Rights. *See* Am. Compl. at Counts One and Two. Article 46, which enacted the Equal Rights Amendment to the Maryland Constitution, provides that "[e]quality of rights under the law shall not be abridged or denied because of sex."

Plaintiff cites Article 46 in support of both Count One (Eighth Amendment deliberate

indifference claims)[6] and Counts Two and Three (Fourteenth Amendment equal protection claims). Regardless of Plaintiff's labeling and pleading intent, it is well settled that Maryland courts ordinarily interpret the provisions of the Maryland Declaration of rights *in pari materia* with their federal analogs.[7] *See, e.g., Frey v. Comptroller of Treasury*, 422 Md. 111, 176, 29 A.3d 475, 513 (2011); *Tyler v. City of College Park*, 415 Md. 475, 499-500, 3 A.3d 421, 435 (2010); *Evans v. State*, 396 Md. 256, 327, 914 A.2d 25, 67 (2006).

## IV.  ANALYSIS

> ### a.  The Amended Complaint fails to allege facts sufficient to establish that this Defendant has acted with deliberate indifference to a serious medical condition of Plaintiff.

Plaintiff's Eighth Amendment claims (Count One) should be dismissed because the Amended Complaint fails to allege facts sufficient to establish that that this Defendant has acted with knowing disregard for an excessive risk to Plaintiff's health or safety due to a serious medical condition of Plaintiff.

The Eighth Amendment proscribes the infliction of cruel and unusual punishment upon persons convicted of a crime. U.S. Const. amend. VIII; *Wilson v. Seiter*, 501 U.S. 294, 296-97, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991). The Supreme Court has held that "deliberate indifference to serious medical needs of prisoners constitutes cruel and unusual punishment" and is actionable under § 1983. *Estelle v. Gamble*, 429 U.S. 97, 104-05, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976).

---

[6] Article 25 of the Maryland Declaration of Rights contains a prohibition against cruel and unusual punishment analogous to the Eight Amendment.

[7] The U.S. Constitution does not include an analog provision to Article 46 of the Maryland Declaration of Rights. However, the Maryland Court of Appeals has held that the equal protection provisions of Article 46 are rooted in the equal protection guarantee of Article 24 of the Maryland Declaration of Rights, which has been held analogous to and *in pari materia* with the Fourteenth Amendment. *See Tyler v. State*, 330 Md. 261, 270, 623 A.2d 648, 653 (1993). In this case, regardless of label or caption, Plaintiff's claims under the Maryland Declaration of Rights would be effectively duplicative of her Eight Amendment and Fourteenth Amendment claims.

Because inmates "must rely on prison authorities to treat [their] medical needs," the government has an "obligation to provide medical care for those whom it is punishing by incarceration." *Estelle*, 429 U.S. at 103.

To state a claim under Section 1983 for deliberate indifference to serious medical needs, a prisoner must show that he had a serious medical need, and that officials knowingly disregarded that need and the substantial risk it posed. *DePaola v. Clarke*, 884 F.3d 481, 486 (4th Cir. 2018) (citations omitted). This requires the plaintiff to allege facts sufficient to establish both "an objective component and a subjective component." *Griffin v. Mortier*, 837 Fed. Appx. 166, 170 (4th Cir. 2020)(citing *Gordon v. Schilling*, 937 F.3d 348, 356 (4th Cir. 2019)). The plaintiff "must [allege] that the defendant prison official acted with 'deliberate indifference' (the subjective component) to the plaintiff's 'serious medical needs' (the objective component)." *Id.*

The objective prong requires a plaintiff to allege facts sufficient to demonstrate a serious medical need. A "serious medical need" is a condition "diagnosed by a physician as <u>mandating treatment</u> or <u>one that is so obvious</u> that even a lay person would easily recognize the necessity for a doctor's attention." *DePaola*, 884 F.3d ay 486 (citation omitted) (emphasis added). This qualification is important. "Because society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are serious." *Hudson v. McMillian*, 503 U.S. 1, 9, 112 S. Ct. 995, 1000, 117 L. Ed. 2d 156 (1992) (citing *Estelle*, 429 U.S., at 103–104, 97 S.Ct., at 290–291)

The subjective and crucial prong requires a plaintiff to allege facts sufficient to establish that the defendant acted with deliberate indifference to a serious medical need. The Fourth Circuit has explained the deliberate indifference analytical framework as follows:

> An official is deliberately indifferent to an inmate's serious medical needs <u>only when he or she subjectively "knows of and disregards an excessive risk to inmate</u>

health or safety." That is <u>a higher standard for culpability than mere negligence or even civil recklessness</u>, and as a consequence, many acts or omissions that would constitute medical malpractice will not rise to the level of deliberate indifference. To show an Eighth Amendment violation, it is not enough that an official should have known of a risk; he or she must have had actual subjective knowledge of both the inmate's serious medical condition and the <u>excessive risk posed by the official's action or inaction</u>.

*Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014) (quoting *Farmer v. Brennan*, 511 U.S. 825, 837, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994) (emphasis added).

The subjective prong of *Farmer* sets a particularly high bar to liability. *Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008). Deliberate indifference is "<u>more than mere negligence</u>… [it] lies somewhere between negligence and purpose or knowledge: namely, <u>recklessness of the subjective type used in criminal law</u>." *Farmer*, 511 U.S. at 835, 114 S.Ct. 1970. Indeed, allegations which "may well represent a deviation from the accepted standard of care, standing alone, [are] insufficient to clear the high bar of a constitutional claim." *Jackson v. Lightsey*, 775 F.3d 170, 179 (4th Cir. 2014). Importantly, under this high standard, "<u>mere disagreements</u> between an inmate and a physician over the inmate's proper medical care are <u>not actionable</u> absent exceptional circumstances." *Scinto v. Stansberry*, 841 F.3d 219, 225 (4th Cir. 2016) (emphasis added).

In this case, Plaintiff's allegations of deliberate indifference fall well short of stating a claim upon which relief could be granted against this Defendant. To the contrary, the allegations in the Amended Complaint merely assert Plaintiff's subjective desire for an additional form of treatment beyond the extensive treatment she is already receiving. At their core, Plaintiff's allegations of deliberate indifference are nothing more than "mere disagreements" over whether Plaintiff should be recommended for SRS.

There is no dispute that Plaintiff has a long-standing diagnosis of gender dysphoria. However, it is likewise undisputed and indisputable that Plaintiff <u>has been undergoing intensive, multi-disciplinary gender dysphoria treatment for years</u>. The Amended Complaint alleges that

Plaintiff has received <u>feminizing hormone therapy since 2014</u>. She has been evaluated by <u>several specialists</u>, including endocrinologists who recommended continuing hormone therapy and psychiatric evaluation in the context of Plaintiff's desire to undergo SRS. She has also been evaluated by <u>licensed clinical psychologists with specialized expertise in gender disorders</u>. A <u>treatment plan</u> for Plaintiff has been recommended, developed, reviewed, and implemented in accordance with Executive Directive. As required by the Executive Directive, the RGDC reviewed Plaintiff's request to undergo SRS in the context of her treatment plan, including her long-standing comorbid mental health diagnoses, and recommended against adding SRS to Plaintiff's therapeutic regimen.

These facts reflected in Plaintiff's Complaints and related documents demonstrate that <u>Plaintiff's gender dysphoria has not and is not being deliberately ignored by Defendants</u>.

Specifically as to Dr. Kraft, the Amended Complaint <u>fails to allege a single fact</u> which would support a claim of deliberate indifference on his part. Rather, the Complaint alleges that (1) Dr. Kraft, in his capacity as the Gender Dysphoria Consultant, <u>recommended genital comfort interventions for Plaintiff but did not recommended that Plaintiff undergo SRS</u>; and (2) that <u>Plaintiff is dissatisfied with and in fact has refused to follow Dr. Kraft's recommendations</u>.

Even in the light most favorable to Plaintiff, the facts of the case indisputably show that Plaintiff has received and continues to receive extensive treatment for gender dysphoria. To overcome this factual bulwark and state a plausible claim of deliberate indifference, Plaintiff must allege facts sufficient to establish that her current gender dysphoria treatment regimen—as reviewed and recommended by the RGDC—nevertheless represents a knowing and subjectively reckless disregard for an excessive risk to Plaintiff's health or safety. *See Farmer*, supra, 511 U.S. at 835, 837, 114 S.Ct. 1970. At a minimum, Plaintiff must allege facts capable of demonstrating

(1) that her current gender dysphoria treatment regimen is medically improper or insufficient; (2) that SRS is medically necessary to treat her gender dysphoria—i.e., that her treatment regimen is otherwise medically inadequate without SRS; and (3) that Defendants are subjectively aware that Plaintiff's health or safety are excessively at risk unless she undergoes SRS.

Plaintiff's Amended Complaint fails to allege any well-pled facts capable of establishing (1) that her current gender dysphoria treatment regimen—consisting of a combination of hormone therapy, social feminization, psychiatric care, and supportive therapy—is medically inappropriate and inadequate to treat her gender dysphoria and (2) that SRS is medically necessary to properly treat Plaintiff's gender dysphoria. Likewise, there are no facts capable of establishing that Defendants are aware of an excessive risk to Plaintiff's health or safety unless she undergoes SRS. To the contrary, the RGDC recommendations reflect a considered professional opinion that SRS itself presents a risk to Plaintiff based on her constellation of mental health diagnoses.

Thus, viewed in the light most favorable to Plaintiff, the allegations in the Amended Complaint reflect Plaintiff's disagreement with the RGDC's corporate recommendations and the individual professional judgment of this Defendant. Such a disagreement is not actionable under Section 1983. *See Jackson v. Sampson*, 536 Fed. Appx. 356, 357 (4th Cir. 2013) ("[Plaintiff's] dispute with Defendants' decision not to authorize the particular treatment program he requested, and the subsequent course of monitoring he received, amounts to a disagreement with his course of treatment that is not cognizable under the Eighth Amendment:); *accord Chance v. Armstrong*, 143 F.3d 698, 703 (2d Cir. 1998) ("[M]ere disagreement over the proper treatment does not create a constitutional claim. So long as the treatment given is adequate, the fact that a prisoner might prefer a different treatment does not give rise to an Eighth Amendment violation."); *Norton v.*

*Dimazana*, 122 F.3d 286, 292 (5th Cir. 1997) ("Disagreement with medical treatment does not state a claim for Eighth Amendment indifference to medical needs.").

In sum, Plaintiff's Amended Complaint fails to allege facts sufficient to establish that this Defendant has acted with deliberate indifference to a serious medical condition of Plaintiff. Therefore, Plaintiff's claims for violations of her Eighth Amendment rights to protection from cruel and unusual punishment based on alleged deliberate indifference to her medical needs should be dismissed.

**b. The Amended Complaint fails to allege facts sufficient to establish that this Defendant treated Plaintiff differently than other similarly situated prisoners.**

Plaintiff's Fourteenth Amendment claims should be dismissed because the Amended Complaint fails to allege facts sufficient to establish that Plaintiff has been or is currently being treated differently than any other similarly situated prisoners diagnosed with gender dysphoria.

The Equal Protection Clause of the Fourteenth Amendment provides that "[n]o State shall ... deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1.

The equal protection requirement "does not take from the States all power of classification, but keeps governmental decisionmakers from treating differently persons who are in all relevant respects alike." *Veney*, supra, 293 F.3d at 730 (citing *Personnel Adm'r v. Feeney*, 442 U.S. 256, 271, 99 S.Ct. 2282, 60 L.Ed.2d 870 (1979) and *Nordlinger v. Hahn*, 505 U.S. 1, 10, 112 S.Ct. 2326, 120 L.Ed.2d 1 (1992) (emphasis added).

Thus, to succeed on an equal protection claim, a plaintiff must first demonstrate (1) that plaintiff has been treated differently from others with whom plaintiff is similarly situated and (2) that the unequal treatment was the result of intentional or purposeful discrimination. *Morrison v. Garraghty*, 239 F.3d 648, 654 (4th Cir.2001). To state a facially plausible equal protection claim,

a plaintiff <u>must plead sufficient facts to satisfy each of these requirements</u>. *Veney*, supra, 293 F.3d at 731. If a plaintiff satisfies this pleading burden, the court then proceeds to determine whether <u>the disparity in treatment can be justified under the requisite level of scrutiny</u>. *Id.* (citation omitted).

In evaluating alleged disparate treatment in a prison context, courts must adjust the level of scrutiny to ensure that prison officials are afforded the necessary discretion to operate their facilities in a safe and secure manner. *Id.* This adjustment reflects the concomitant realities that "lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system." *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348, 107 S.Ct. 2400, 96 L.Ed.2d 282 (1987) and that "courts are ill equipped to deal with the increasingly urgent problems of prison administration and reform." *Turner v. Safley*, 482 U.S. 78, 84, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987).

Consistent with these principles, the Supreme Court has held that "a prison regulation [that] impinges on inmates' constitutional rights ... is valid if it is <u>reasonably related to legitimate penological interests</u>." *Turner*, 482 U.S. at 84, 107 S.Ct. 2254 (emphasis added). This more deferential standard applies even when the alleged infringed constitutional right would <u>otherwise warrant higher scrutiny</u> and even when the challenged actions <u>would be unconstitutional outside the prison context</u>. *Morrison*, supra, 239 F.3d at 655 (citations omitted). Consequently, to state an equal protection claim upon which relief may be granted, and in addition to establishing a prima facie claim of disparate discriminatory treatment, a prisoner plaintiff <u>must allege facts sufficient to overcome the presumption of reasonableness applied to prison policies</u>. *Veney*, supra, 293 F.3d at 732.

While the precise bases for Plaintiff's equal protection claims regarding SRS are unclear, the Amended Complaint appears to allege that Plaintiff, as a transgender female prisoner, is treated

differently than cisgender female prisoners because certain medical interventions are available to cisgender female prisoners but have been discriminatorily denied to Plaintiff. *Id.* at ¶¶ 32, 34.

The Amended Complaint fails to satisfy Plaintiff's foundational burden to plead facts capable of establishing (1) that Plaintiff has been treated differently from others with whom she is similarly situated and (2) that this unequal treatment was the result of intentional or purposeful discrimination. Besides a conclusory assertion that the medical interventions have been denied to Plaintiff but have been made available to other prisoners, the Amended Complaint fails to allege any facts capable of establishing that Plaintiff is in fact being treated differently than any other similarly situated prisoners.

Plaintiff's equal protection claim fails at the most basic level because the Amended Complaint is devoid of any allegations that Plaintiff is being treated differently than other transgender prisoners suffering from gender dysphoria. Simply stated, Plaintiff's allegations are premised on a comparison to a class of prisoners—cisgender biological females—which is dissimilar to Plaintiff. Specifically, the Amended Complaint alleges that Plaintiff is a transgender prisoner who is being treated differently than cisgender prisoners. The Amended Complaint likewise alleges that Plaintiff is a biological male who is being treated differently than biological females.

Both allegations of disparate treatment are insufficient to sustain an equal protection challenge simply because they compare dissimilar classes. The Equal Protection Clause "does not require things which are different in fact to be treated in law as though they were the same." *Michael M. v. Superior Court of Sonoma County*, 450 U.S. 464, 469, 101 S. Ct. 1200, 1204, 67 L. Ed. 2d 437 (1981) (internal quotations and citations omitted). A gender classification that is not invidious but rather realistically reflects the fact that the sexes are not similarly situated in certain

circumstances does not violate the Equal Protection Clause. *Id.* Consequently, even if assumed to be true, the allegations in the Amended Complaint nevertheless fail to state a facially plausible equal protection claim.

The Amended Complaint is likewise devoid of any facts capable of establishing disparate treatment of Plaintiff relative to any other prisoners. Indeed, Plaintiff fails to allege any facts regarding the availability of the medical interventions mentioned in the Amended Complaint, including (1) instances in which these procedures were offered to other prisoners, if any; (2) the characteristics of such other prisoners, if any; and (3) the circumstances under which the procedures were offered to other prisoners.

Because Plaintiff has failed to plead facts capable of establishing that she is being treated differently than any other similarly situated prisoners, Plaintiff cannot establish that her treatment was intentionally or purposefully discriminatory.

In short, the allegations in the Amended Complaint fall well short of stating a facially plausible equal protection claim. Therefore, Plaintiff's claim of violation of her alleged right to SRS under the Equal Protection Clause of the Fourteenth Amendment should be dismissed.

## V. CONCLUSION

Plaintiff's Eighth Amendment claims should be dismissed because Plaintiff's Amended Complaint fails to allege facts sufficient to establish that that this Defendant has acted with deliberate indifference to a serious medical condition.

Plaintiff's Fourteenth Amendment claims should be dismissed because Plaintiff's Amended Complaint fails to allege facts sufficient to establish that Plaintiff has been or is currently being treated differently than any other similarly situated prisoners diagnosed with gender dysphoria.

To the extent Plaintiff has asserted any claims under the Maryland Declaration of Rights within the Amended Complaint, such claims would be duplicative of Plaintiff's claims under the Eight and Fourteenth Amendments. Any rights conferred to Plaintiff by the Maryland Declaration of Rights would be and *in pari materia* with the analogous rights conferred by the U.S. Constitution. Consequently, Plaintiff's claims under the Maryland Declaration of Rights should be dismissed for the same reasons requiring dismissal of Plaintiff's Eight Amendment and Fourteenth Amendment claims.

For these reasons, and as supported by the above points and authorities, the Defendant, Chris Kraft, Ph.D., respectfully requests that this Honorable Court enter an Order dismissing all of Plaintiff's claims and the Amended Complaint against him, and granting him such further relief as this Honorable Court deems just and appropriate.

Dated: March 31, 2022

Respectfully Submitted,

ARMSTRONG, DONOHUE, CEPPOS,
VAUGHAN & RHOADES, CHARTERED

*/s/ Andrew J. Marter, Esquire*
Benjamin S. Vaughan, Esquire # 02951
Andrew J. Marter, Esquire, #13039
German A. Rodriguez, Esquire #19006
204 Monroe Street, Suite 101
Rockville, Maryland 20850
(301) 251-0440 tel
(301) 279-5929 fax
bvaughan@adclawfirm.com
amarter@adclawfirm.com
grodriguez@adclawfirm.com
*Attorneys for Defendant, Chris Kraft, Ph.D.*